# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

---

**JESSE JAMES FRANCIS,**

               Plaintiff,

  v.

**HEARST TELEVISION INC., et al.,**

               Defendants.

Case No. 1:23-cv-1585

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CABLE NEWS NETWORK, INC.'S MOTION TO DISMISS <u>THE COMPLAINT WITH PREJUDICE</u>

Charles D. Tobin (D. Md. Bar No. 15919)
Maxwell S. Mishkin (D. Md. Bar No. 20650)
Margaret N. Strouse (D. Md. Bar No. 21714)
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
strousem@ballardspahr.com

*Counsel for Defendant Cable News Network Inc.*

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................................................2

I.      FRANCIS'S CRIMINAL RECORD ....................................................................2

II.     FRANCIS'S INTERACTIONS WITH MADISON VITAL ..................................3

III.    VITAL'S VIRAL TIKTOK VIDEO .....................................................................6

IV.    CNN'S NEWS REPORT .....................................................................................7

V.     THIS LAWSUIT ..................................................................................................9

ARGUMENT ..................................................................................................................10

I.      STANDARD OF REVIEW ................................................................................10

II.     FRANCIS'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW ......................12

      A.     Maryland's Fair Report Privilege Fully Protects CNN's Reporting.....................12

            1.     The "Fair Report" Privilege Protects Fair and Accurate News Reports on Judicial Records and Proceedings .............................................12

            2.     The Fair Report Privilege Completely Protects the CNN Report.........................................................................................15

      B.     Francis Does Not Plausibly Allege That The CNN Report Is False.....................16

      C.     CNN's Reporting Does Not Identify Francis...........................................17

III.    FRANCIS FAILS TO STATE A CLAIM FOR IIED .............................................18

      A.     CNN Did Not Engage In Any Extreme And Outrageous Conduct ......................19

      B.     Francis Has Not Pleaded Severe Emotional Distress, As Maryland Requires ........................................................................................20

IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR PUNITIVE DAMAGES.........21

V.     FRANCIS ALSO SEEKS AN UNCONSTITUTIONAL PRIOR RESTRAINT .............23

CONCLUSION...............................................................................................................24

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agbapuruonwu v. NBC Subsidiary (WRC-TV)*,
  2020 U.S. App. LEXIS 26163 (4th Cir. Aug. 18, 2020) ...................................................11, 14

*AIDS Counseling & Testing Centers v. Group W Television, Inc.*,
  903 F.2d 1000 (4th Cir. 1990) ........................................................................................18

*Ancient Coin Collectors Guild v. U.S. Customs & Border Protection*,
  801 F. Supp. 2d 383 (D. Md. 2011) ..................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................10, 11

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963) ........................................................................................................24

*Batson v. Shiflett*,
  325 Md. 684 (1992) ................................................................................................19, 20

*Biospherics, Inc. v. Forbes, Inc.*,
  151 F.3d 180 (4th Cir. 1998) ........................................................................................11

*Blankenship v. NBCUniversal, LLC*,
  60 F.4th 744 (4th Cir. 2023) ........................................................................................23

*CACI Premier Technology, Inc. v. Rhodes*,
  536 F.3d 280 (4th Cir. 2008) ........................................................................................22

*Capital-Gazette Newspapers v. Stack*,
  293 Md. 528 (1982) ......................................................................................................22

*Carr v. Watkins*,
  227 Md. 578 (1962) ......................................................................................................18

*Chapin v. Knight-Ridder, Inc.*,
  993 F.2d 1087 (4th Cir. 1993) .................................................................................11, 16

*Chesapeake Publishing Corp. v. Williams*,
  339 Md. 285 (1995) ...............................................................................................12, 13, 14

*Church of Scientology International v. Behar*,
  238 F.3d 168 (2d Cir. 2001) ........................................................................................18

*Dun & Bradstreet v. Greenmoss Builders*,
  472 U.S. 749 (1985) ............................................................................................21

*Dutra Group v. Batterton*,
  139 S. Ct. 2275 (2019) ........................................................................................21

*Edwards v. Schwartz*,
  378 F. Supp. 3d 468 (W.D. Va. 2019) ................................................................16

*Fairfax v. CBS Broadcasting Inc.*,
  534 F. Supp. 3d 581 (E.D. Va. 2020) ...................................................................8

*Fairfax v. CBS Corp.*,
  2 F.4th 286 (4th Cir. 2021) .................................................................................23

*Foor v. Juvenile Services Administration*,
  78 Md. App. 151 (1989) ......................................................................................19

*Fornshill v. Ruddy*,
  891 F. Supp. 1062 (D. Md. 1995) ........................................................................12

*Francis v. Vital*,
  SCM-PET-0029-2023 (Md.) ..................................................................................5

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ...............................................................................23

*Gladhill v. Chevy Chase Bank, FSB*,
  2001 Md. App. LEXIS 205 (Md. Ct. Spec. App. Aug. 1, 2001) ...........................14

*Hamilton v. Ford Motor Credit Co.*,
  66 Md. App. 46 (1986) ........................................................................................19

*Harris v. Jones*,
  281 Md. 560 (1977) ........................................................................................18, 19

*Harte-Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657 (1989) ............................................................................................23

*Harvey v. CNN, Inc.*,
  48 F.4th 257 (4th Cir. 2022) ....................................................................11, 12, 14

*Hrehorovich v. Harbor Hospital Center*,
  93 Md. App. 772 (1992) ......................................................................................18

*Johnson v. Experian Information Solutions, Inc.*,
  2015 U.S. Dist. LEXIS 163257 (D. Md. Nov. 17, 2015) ......................................17

iii

*Kahl v. Bureau of National Affairs, Inc.*,
856 F.3d 106 (D.C. Cir. 2017) ................................................................................11

*Koren v. Capital-Gazette Newspapers, Inc.*,
22 Md. App. 576 (1974) ...........................................................................................14

*Le Marc's Management Corp. v. Valentin*,
349 Md. 645 (1998) ..................................................................................................22

*Martin v. Hearst Corp.*,
777 F.3d 546 (2d Cir. 2015).....................................................................................16

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991) ..................................................................................................16

*Mayfield v. NASCAR, Inc.*,
674 F.3d 369 (4th Cir. 2012) ...........................................................................10, 23

*Mejia v. Telemundo Mid-Atlantic LLC*,
440 F. Supp. 3d 495 (D. Md. 2020).........................................................................21

*Miami Herald Publishing Co. v. Tornillo*,
418 U.S. 241 (1974) ..................................................................................................24

*Mitchell v. Lydall, Inc.*,
16 F.3d 410, 1994 U.S. App. LEXIS 2177 (4th Cir. Feb. 10, 1994) ......................21

*Nanji v. National Geographic Society*,
403 F. Supp. 2d 425 (D. Md. 2005).................................................................11, 14

*National Shutter Bar Co. v. G.F.S. Zimmerman & Co.*,
110 Md. 313 (1909) ..................................................................................................17

*Near v. Minnesota*,
283 U.S. 697 (1931)..................................................................................................24

*Nebraska Press Association v. Stuart*,
427 U.S. 539 (1976)..................................................................................................24

*New York Times Co. v. United States*,
403 U.S. 713 (1971)..................................................................................................24

*Olukoya v. Sowore*,
2019 U.S. Dist. LEXIS 129043 (D. Md. Aug. 1, 2019) .........................................14

*Pemberton v. Bethlehem Steel Corp.*,
66 Md. App. 133 (1986) .....................................................................................20, 21

*Philadelphia Newspapers v. Hepps*,
   475 U.S. 767 (1986)................................................................................16

*Piscatelli v. Van Smith*,
   424 Md. 294 (2012) ..........................................................................12, 13

*Procter & Gamble Co. v. Bankers Trust Co.*,
   78 F.3d 219 (6th Cir. 1996) ...................................................................24

*Prucha v. Weiss*,
   233 Md. 479 (1964) ................................................................................17

*Respess v. Travelers Casualty & Surety Co. of America*,
   770 F. Supp. 2d 751 (D. Md. 2011) ........................................................19

*Reuber v. Food Chemical News, Inc.*,
   925 F.2d 703 (4th Cir. 1991) .................................................................13

*Simon v. Union Hospital of Cecil County, Inc.*,
   15 F. Supp. 2d 787 (D. Md. 1998) ..........................................................21

*Steer v. Lexleon, Inc.*,
   58 Md. App. 199 (1984) ...................................................................13, 14

*Sunrise Pharmaceutical, Inc. v. Vision Pharma, LLC*,
   799 F. App'x 141 (3d Cir. 2020) ............................................................16

*Swindol v. Aurora Flight Sciences Corp.*,
   832 F.3d 492 (5th Cir. 2016) .................................................................16

*Tannerite Sports, LLC v. NBCUniversal News Group*,
   864 F.3d 236 (2d Cir. 2017)...................................................................16

*Uzoechi v. Wilson*,
   2018 U.S. Dist. LEXIS 88815 (D. Md. May 24, 2018).............................20

*Walker v. Kelly*,
   589 F.3d 127 (4th Cir. 2009) ...................................................................1

*Yerkie v. Post-Newsweek Stations, Michigan, Inc.*,
   470 F. Supp. 91 (D. Md. 1979)...............................................................22

## Other Authorities

Restatement (Second) of Torts § 617 (1977)................................................18

2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017)...................11

## PRELIMINARY STATEMENT

Plaintiff Jesse Francis, an alleged serial offender well known to the Maryland state courts, filed this action against Defendant Cable News Network, Inc. ("CNN") for defamation and intentional infliction of emotional distress ("IIED").  He challenges a CNN news report that truthfully referenced several judicial proceedings in which Francis concedes he was involved.

Francis, repeatedly charged with the same type of criminal behavior referenced in the lawful journalism in this matter, fails to state a claim.  As the Complaint and documents properly before this Court demonstrate,[1] CNN's reporting accurately reflects the official proceedings against Francis and therefore is both protected by Maryland's "fair report" privilege and substantially true.  Additionally, CNN's journalism never even mentions Francis, and he therefore has not established a publication that is of-and-concerning him, as defamation law requires.  Moreover, as CNN's journalism will not support Francis's defamation claim, he also may not proceed under his alternative IIED claim.  Finally, the Complaint prays for an unconstitutional prior restraint, and Plaintiff also requests punitive damages without pleading the necessary factual predicate.

Each of these failures is fatal to this lawsuit in whole or in part, and the Court properly can and should resolve each of them at the motion to dismiss stage.  For these reasons, as more fully set forth below, the Court should grant CNN's motion and dismiss this Complaint with prejudice.

---

[1] The Maryland court records cited in and submitted with CNN's motion are properly considered by the Court at this stage of the proceedings. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) ("[A] federal court may consider matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion.").

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**I.   FRANCIS'S CRIMINAL RECORD**

This lawsuit is hardly Francis's first interaction with the courts.  As the public court documents show, over the past six years, Francis has been repeatedly charged, by a number of different people, with the type of assaultive behavior each Defendant in this lawsuit reported on. Many of those charges have been validated by the Maryland courts, and the latest assault Francis is charged with is scheduled for trial in the near future.

Francis's violent record in the Maryland courts was first documented on November 28, 2017, when his ex-wife reported that he assaulted her.  *See* Decl. of Charles D. Tobin ("Tobin Decl.") Ex. 1 at 3 (Statement of Charges in *Maryland v. Francis*).  According to the charges that Francis's ex-wife filed with the Baltimore County District Court, Francis "threatened to physically harm" her during a custody exchange, then "pushed [her] back" and told her "to stay in [her] place."  *Id.* at 6 (Application for Statement of Charges in *Maryland v. Francis*). Francis's ex-wife told the court that "[t]his is not the first time he has violently put his hands on [her] while angry," but that she is "finally coming forward [with] all this because his anger is out of control and [she's] not sure what he'll do next."  *Id.*  The court, accepting his ex-wife's allegations, subsequently ordered Francis not to contact his ex-wife except regarding their shared child. *Id.* at 7 (Mar. 15, 2018 order in *Maryland v. Francis*).

This was just the first of many incidents of violence underlying additional charges against Francis in court.  For example:

- The case file from *Roberts v. Francis*, in the District Court for Baltimore County, shows that in November and December 2019, Francis's ex-wife's partner obtained a series of three temporary peace orders against him in that court.  Tobin Decl. Ex. 2 at 7, 9, 11 (temporary peace orders in *Robert v. Francis*).  In seeking those orders, the petitioner represented to the court that Francis had

made "[r]epeated phone threats to punch [his] teeth down [his] throat and smash [his] face in." *Id.* at 2.

- The case file from *Hirsch v. Francis*, in the District Court for Baltimore City, shows that in May 2022, a Baltimore woman obtained a temporary peace order against Francis after reporting that Francis "carries a gun" and "attempts to enter [her] house . . . without [her] consent." Tobin Decl. Ex. 3 at 2 (May 25, 2022 application for peace order in *Hirsch v. Francis*); *id.* at 7 (May 25, 2022 Judge Pate temporary peace order in *Hirsch v. Francis*). She described Francis as "mentally unstable & aggressive" and that his actions have caused her to be "afraid for myself & my family." *Id.* at 2.

Francis's outbursts continued through this year. The case file from *Jackson v. Francis*, in the District Court for Baltimore County, shows that on May 10, 2023, Francis was charged with assaulting his current girlfriend's ex-partner, Aaron Wayne Jackson. Tobin Decl. Ex. 4. According to the charges that Jackson filed in that court, after Jackson and Francis "got into a verbal confrontation" at a grocery store, Francis "punched [Jackson] in the face[,] grabbed [him] up and threw [him] on the floor," and "proceeded to punch [him] and chok[e] [him]," causing injuries that sent Jackson "to the hospital by ambulance." *Id.* at 2-3. Jackson obtained two temporary peace orders following the same assault. *Id.* at 7, 11. Francis's trial on this assault charge is scheduled for August 17, 2023. Tobin Decl. Ex. 5 (docket in *Maryland v. Francis* as of August 11, 2023).

## II.   FRANCIS'S INTERACTIONS WITH MADISON VITAL

Francis's interactions with Madison Vital, the source who CNN and the other Defendants here reported about, follow the same pattern as Francis's other court cases. According to the Complaint in this case, Francis was a student at the University of Baltimore in October 2022 when Vital, his fellow student, "filed criminal charges against [him], alleging, among other things, that he threatened her with a handgun, as well as harassed her." Compl. ¶¶ 7-8. Public

court records provide even more disturbing detail.  According to the case file in *Maryland v. Francis*, the charges that Vital filed with the Baltimore City District Court show that:

- Francis told Vital that "he is done looking for love and next time he will just kidnap a girl and force them to stay";

- Francis told Vital that he "can kill [her] in one shot";

- Francis told Vital and a friend of hers "that he owns 13 guns, one of which he brings to school every day";

- Francis told Vital that he "wants to be an attorney so he can get custody of his kids and if that doesn't work he will kill both his exes and get himself off the murder charges if he is caught";

- Francis told Vital that he carries a gun to school "in case there is a school shooter" or "in case someone pisses [him] off";

- Francis called Vital on two separate occasions and told her exactly where she was located, even though Vital could not see him;

- Francis "hit/shoved" his service dog in front of Vital; and

- Francis wrote "watch your back" on Vital's class notes.

Tobin Decl. Ex. 6 at 8-12.  As the case files further show, Vital told the Maryland court that, as a result of these interactions, the University of Baltimore "instructed [her] not to attend class or come to campus until further notice so that [she is] safe." *Id.* at 12.  Vital also told the court that she first reported these incidents to a University faculty member, who referred her to campus police, who then referred her to Baltimore City police, who finally advised her to file a peace order "ASAP." *Id.*  Vital added in her charging document, "I am absolutely terrified to leave my home or to be alone.  If this isn't handled soon I honestly think I am going to get killed." *Id.*

According to the case file, based on Vital's allegations, the Baltimore City District Court issued an arrest warrant on five counts against Francis:  two counts of second degree assault and

4

one count each of stalking, possession of a handgun on the person, and telephone misuse for harassing Vital with repeated calls.  *Id.* at 15.[2]

Court records show that Baltimore University police arrested Francis on October 11, 2022.  *Id.* at 48.  The incident report filed with the court states that police searched Francis's backpack and found "one Glock .40 caliber handgun with 12 rounds in the magazine and one round in the chamber."  *Id.*  When Francis was released on bail, a condition of his release was that he "NOT CONTACT MADISON VITAL" and stay away from the University of Baltimore campus.  *Id.* at 20.  Vital also received two temporary and, after a contested hearing, one final peace order against Francis for assault and stalking, ordering Francis to stay away from Vital, the University of Baltimore, and Mercy Medical Facility, where Vital was to receive medical treatment, until April 18, 2023.  Tobin Decl. Ex. 7 at 18, 28 (peace orders in *Vital v. Francis*).

After CNN's reporting was posted online on October 23, 2022, court records in the *Vital v. Francis* case show that the Baltimore City Circuit Court affirmed the final peace order in December 2022, finding that Francis's "assault" and "stalking" put Vital "in fear of imminent serious bodily harm."[3]  Tobin Decl. Ex. 8 at 17 (Dec. 20, 2022 Judge Peter's reissue of final peace order in *Vital v. Francis*).

---

[2] Additional charges related to possession of a loaded gun on school property were subsequently filed against Francis.  *Id.* at 54 (criminal trial docket charge 8 of 8).

[3] Still not satisfied, Francis subsequently appealed Vital's final peace order to the Maryland Supreme Court in March of this year.  *See Francis v. Vital*, SCM-PET-0029-2023 (Md.).  The Supreme Court denied Francis's petition for a writ of certiorari on July 28, 2023.  *Id.*

III.   **VITAL'S VIRAL TIKTOK VIDEO**

On October 16, 2022, Vital published a video on the popular social media platform

TikTok criticizing the University of Baltimore for its actions (and, in her view, its inaction)

following her filing charges against Francis.[4]  In this video (the "TikTok Video"), Vital states:

> There is a student in two of my classes who brings a gun to school
> every single day even though it's against University policy.  This
> same student has stalked, threatened, and assaulted me, both on
> and off campus, since the second week of classes.
>
> I reported this to three of my professors on October 5th and 6th.
> By October 7th, the police were involved, and I was advised to file
> both criminal charges and a peace order against this student,
> because this student has a very long history of doing things like
> this.  A warrant was immediately put out for this student's arrest,
> and the student was arrested on campus.  During the arrest, the
> police did find a gun in the student's backpack.
>
> This student was arrested six days after I initially reported this to
> the school, and the school had yet to send out any type of
> notification regarding the fact that there was a student on campus
> with a gun.

*See* TikTok Video at 0:20 – 1:10.  Vital also states that on October 12, 2022, she "went to court

for the temporary peace order," and that the court "ordered that this student stay away from

University of Baltimore."  *Id.* at 01:11 – 01:18.  During this portion of the TikTok Video, a copy

of a temporary peace order can be seen behind Vital:

---

[4] While Vital's video is no longer available on her own TikTok account, the video was
promptly republished and it remains available online as of this filing, *inter alia*, at
https://www.reddit.com/r/baltimore/comments/y6ixec/university_of_baltimore_student_with_gu
n_on_campus/.  By citing and relying on this video (Compl. ¶¶ 9-10, 17), the Complaint
incorporates it by reference, and the Court therefore may consider it on this motion to dismiss.
*See Ancient Coin Collectors Guild v. U.S. Customs & Border Prot.*, 801 F. Supp. 2d 383, 394 n.3
(D. Md. 2011) ("When a court considers a motion to dismiss, it may consider documents not
attached to the complaint, without converting a motion to dismiss into one for summary
judgment, 'if the document was integral to and explicitly relied on in the complaint and if the
plaintiffs do not challenge its authenticity.'") (quoting *CACI Int'l, Inc. v. St. Paul Fire & Marine
Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009)).



In the remainder of the video, Vital explains how, due in part to her advocacy, University of Baltimore professors pressured the University President to "put out some form of notification" about these events.  Vital criticizes that "notification" for not providing what she considered key details, including "that the student had the literal gun on campus."  *Id.* at 1:19-3:00.

## IV.  CNN'S NEWS REPORT

CNN's reporting on Vital's official complaints was never telecast.  Instead, on October 23, 2022, CNN published, solely online, the news report about the TikTok Video that Plaintiff challenges.  CNN's online report was titled, "She says an armed student threatened her life. She hasn't been back to campus since" (the "CNN Report").  The CNN Report is incorporated into

the Complaint by reference,[5] and it remains available online at https://www.cnn.com/videos/us/ 2022/10/23/madison-vital-viral-tiktok-university-of-baltimore-intv-newday-vpx.cnn.[6]

The CNN Report begins with *New Day* co-anchor Brianna Keilar reporting that "[i]n a viral TikTok video viewed more than one million times, University of Baltimore student Madison Vital alleges that an armed student threatened her life on campus," and that while "that student was arrested," Vital believes the University failed by not "warn[ing] the community immediately." CNN Report at 0:00-0:19. Viewers then see a clip of the TikTok Video in which Vital criticized the University because "a week and a half after the initial report the school had yet to notify anybody on campus about . . . a student with a gun on campus." *Id.* at 0:20-0:42.

CNN's Keilar next describes what the University told its students about the incident, and then sits down for an in-studio interview with Vital about the TikTok Video and the University's response. *Id.* at 0:42-1:14. During that interview, Vital describes the allegations precisely as they appear in her application for criminal charges, including that she "did see the actual gun" and that the student told Vital "multiple times that he brought the gun to school every day." *Id.*

---

[5] *See, e.g.*, *Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581, 585 n.2 (E.D. Va. 2020) (recognizing that "[w]ithout converting a Rule 12(b)(6) motion into one for summary judgment, a court may consider . . . documents incorporated by reference into the complaint," and concluding that a complaint in a defamation case incorporates a challenged report where, as here, it "references and cites" that report), *aff'd*, 2 F.4th 286 (4th Cir. 2021).

[6] Other news organizations not named in the Complaint reported on the TikTok Video as well. *See, e.g.*, Paul Gessler, *In viral TikTok video, University of Baltimore student says armed classmate threatened her*, WJZ News (Oct. 18, 2022), https://www.cbsnews.com/ baltimore/news/university-of-baltimore-students-tiktok-video-goes-viral-for-posting-about- armed-classmate/; Liz Bowie, *UB student turns to TikTok to sound alarm about another student she views as 'threat' to campus*, The Baltimore Banner (Oct. 18, 2022), https://www.thebaltimorebanner.com/community/criminal-justice/student-turns-to-tik-tok-to- sound-alarm-about-suspect-she-views-as-threat-to-campus- AWHSZASXLBCQRNYBRMIXM2DON4/; Sabrina LeBoeuf, *University of Baltimore student voices safety concerns in TikTok video about peer with gun*, The Baltimore Sun (Oct. 19, 2022), https://www.baltimoresun.com/education/bs-md-university-baltimore-safety-concerns-tiktok- 20221018-3lul2p2ohzeu3gtlkszb43tkoq-story.html.

at 1:15-1:40.  Keilar then asks Vital, "You said that he stalked and assaulted you, can you tell us what you told the University and what they told you," and Vital responds, "I told the University about the entire situation" and "sent them copies of the temporary peace order that was put in place last Wednesday, and they have received a copy of the final peace order that was put in place yesterday."  *Id.* at 1:40-2:00.  After discussing that the TikTok Video unexpectedly went viral, Vital mentions that she has not been back to the University of Baltimore since "October 5, which was the first day [she] reported the incident."  *Id.* at 2:00-3:00.  Keilar then asks Vital about her allegation that "the student has a record of doing things like this," and Vital replies, again accurately reflecting the public record: "If you do go on Maryland Judiciary Case Search, it's public information.  I am not his first peace order, I am his third order."  *Id.* at 3:01-3:14.[7] Vital adds, again accurately, that she is "also not his first assault charge either."  *Id.* at 3:17-3:21.

The interview concludes with Vital explaining the toll this process has taken on her: "While I do have a final peace order, and I am very grateful for that, at the end of the day it's a piece of paper.  If the student wants to get to me, a piece of paper not going to stop him.  So it is scary and it is terrifying and unfortunately because the school's response it has caused me even more emotional distress than just the situation with the student alone."  *Id.* at 3:22-4:04.

At no point during the CNN Report is Jesse Francis identified by name or even described in any detail.

## V.    **THIS LAWSUIT**

On June 12, 2023, Francis filed this lawsuit against CNN and the parent companies of local television stations WBAL (Hearst Television) and WBFF (Sinclair Broadcast Group).  The Complaint asserts claims of defamation (Count I) and IIED (Count II) against all three

---

[7] The official Maryland Judiciary Case Search website "provides public access to the case records of the Maryland Judiciary."  *See* https://casesearch.courts.state.md.us/casesearch/.

Defendants.  Compl. ¶¶ 41-57.  Francis seeks $25 million in "compensatory and punitive damages, plus costs" as well as "reasonable attorney's fees."  Compl. at 7.  Francis also asks the Court to order that "all news stories and interviews of Vital[] be removed from Defendants[']
YouTube channels and any other place where they can be found."  *Id.*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, CNN now moves to dismiss Francis's Complaint with prejudice.

## ARGUMENT

The Court should dismiss this Complaint against CNN because Francis fails, as a matter of Maryland law, to state a claim for defamation or IIED.  The record properly before the Court reflects that CNN truthfully and accurately reported on court records and judicial proceedings, and thus the "fair report" privilege and the substantial truth of CNN's reporting protect CNN from Francis's defamation and IIED claims.  The IIED claim also fails for the separate and independent reason that Francis has not plausibly alleged that CNN engaged in any "extreme and outrageous" behavior or that he suffered "severe" emotional distress as required under Maryland law.  Francis also cannot prevail on his request for punitive damages because he does not even plead, nor could he possibly prove, that CNN published the news report with actual malice. Finally, Francis's requested relief includes what would be a plainly unconstitutional prior restraint, and the Court should therefore deny such relief as well.

## I.  <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss, a plaintiff must set forth factual allegations sufficient to plausibly allege each element of the stated cause of action.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  These factual allegations must be sufficient to "'raise a right to relief above the speculative level.'"  *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  As such, "[a] pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Because claims arising from challenged speech can implicate constitutional rights, courts

review their legal sufficiency with particular care.  As the D.C. Circuit has noted:

> The First Amendment guarantees freedom of speech and freedom of the
> press.  Costly and time-consuming defamation litigation can threaten those
> essential freedoms.  To preserve First Amendment freedoms and give
> reporters . . . the breathing room they need to pursue the truth, the
> Supreme Court has [therefore] directed courts to expeditiously weed out
> unmeritorious defamation suits.

*Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017).  Defamation claims are

also especially susceptible to early judicial action because "unlike in most litigation, in a libel

suit the central event—the communication about which suit has been brought—is ordinarily

before the judge at the pleading stage.  He or she may assess it upon a motion to dismiss,

firsthand and in context."  2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017).[8]  As

such, courts frequently dismiss such claims where, as here, they fail as a matter of law.  *See, e.g.*,

*Harvey v. CNN, Inc.*, 48 F.4th 257, 274 (4th Cir. 2022) (affirming dismissal of defamation claim

in this district under Maryland's fair report privilege); *Agbapuruonwu v. NBC Subsidiary (WRC-

TV)*, 2020 U.S. App. LEXIS 26163 (4th Cir. Aug. 18, 2020) (affirming dismissal of defamation

claim under Virginia's fair report privilege); *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 182,

186 (4th Cir. 1998) (affirming dismissal of libel claim "[b]ecause the challenged statements are

constitutionally protected"); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1091-92 (4th Cir.

1993) (same); *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 434 (D. Md. 2005)

(dismissing a defamation claim under Maryland's fair report privilege where the "reporting was

---

[8] The Honorable Robert D. Sack is a Senior District Judge on the U.S. Court of Appeals for
the Second Circuit.

consistent with judicial findings and the statements concerning [plaintiff's] conduct"); *Fornshill v. Ruddy*, 891 F. Supp. 1062, 1073 (D. Md. 1995) (granting a motion to dismiss that the court treated as a motion for summary judgment because the alleged defamation was not "of and concerning" plaintiff).

Because the claims against CNN in this case are all deficient as a matter of law, this Court should likewise grant CNN's motion and dismiss the Complaint with prejudice.

## II.   **FRANCIS'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW.**

"To establish a prima facie case of defamation under Maryland law, a plaintiff must sufficiently allege (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Harvey*, 48 F.4th at 269 (internal marks omitted). Francis fails to make the required showing as to at least three of these elements: he does not (and cannot) sufficiently allege that the CNN Report was "unprivileged" or "false" or was "concerning" him.

### A.   **Maryland's Fair Report Privilege Fully Protects CNN's Reporting.**

#### 1.   **The "Fair Report" Privilege Protects Fair and Accurate News Reports on Judicial Records and Proceedings.**

Maryland's "fair report" privilege immunizes the publication of fair and accurate reports regarding the record of civil lawsuits and other "legal and official proceedings." *Piscatelli v. Van Smith*, 424 Md. 294, 309-10 (2012). It is "'broader in its scope'" than other privileges, *id*. at 309-10 & n.3 (quoting *Rosenberg v. Helinski*, 328 Md. 664, 677-78 (1992)), reaching "not only comprehensive accounts of judicial proceedings, but [also] accounts focusing more narrowly on important parts of such proceedings." *Chesapeake Publ'g Corp. v. Williams*, 339 Md. 285, 297

(1995) (citation omitted) (extending privilege to various court documents related to custody case, including child psychologist reports, letters, and documents concerning charges from other cases).  *See also Piscatelli*, 424 Md. at 311, *affirming* 197 Md. App. 23 (2011) (privilege applied to supplemental discovery memorandum in criminal case file containing witness' statement to prosecutor); *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 712-13 (4th Cir. 1991) (reprimand letter by private research firm under contract with government agency was "official action" entitled to protection of privilege).

This privilege applies even when the record itself contains allegedly false and defamatory statements and the publication repeats them in the course of reporting on the proceeding. *Chesapeake Publ'g Corp*, 339 Md. at 296 ("In Maryland, there exists a qualified privilege to report on legal proceedings, even if the story contains defamatory material, as long as the account is fair and substantially accurate."); *Piscatelli*, 424 Md. at 309-10 ("The fair reporting privilege is a qualified privilege to report legal and official proceedings that are, in and of themselves defamatory, so long as the account is 'fair and substantially accurate.'").  This rule serves a main purpose of the privilege: to allow journalists "to inform citizens" of what is happening in the courts without fear that they may be held liable for the information those government records contain.  *See, e.g.*, *Reuber*, 925 F.2d at 712.

Consistent with the strong judicial policy behind this privilege, to support a finding of privilege, Maryland requires only substantial accuracy, not a literal rendition, of the legal proceeding.  "[S]o long as the substance, the gist, the sting, of the libelous charge be justified," the Supreme Court of Maryland has noted, a publication that "taken as a whole, is a fair and substantially accurate account of" a proceeding is privileged.  *Chesapeake Publ'g Corp.*, 339 Md. at 296, 300; *see also Steer v. Lexleon, Inc.*, 58 Md. App. 199, 207 (1984) ("[T]he defendant-

13

newspaper enjoyed a qualified privilege to report the event (the arrest and the charge) just so long as the newspaper's report (not the underlying police report) was 'a substantially accurate statement of the facts' and did not go beyond that statement so as to 'comment upon or infer probable guilt of the person arrested.'"); *Koren v. Capital-Gazette Newspapers, Inc.*, 22 Md. App. 576, 581 (1974) ("Even if the underlying arrest or the underlying criminal charges turn out to be ill-founded, it is well settled that in Maryland a newspaper enjoys a qualified privilege to publish reports of arrests and charges on which arrests are made, as well as other matters involving violation of the law.").

Whether the privilege applies "is a question of law for the court." *E.g.*, *Gladhill v. Chevy Chase Bank, FSB*, 2001 Md. App. LEXIS 205, at *28 (Md. Ct. Spec. App. Aug. 1, 2001) (citing *Gohari v. Darvish*, 363 Md. 42, 63 (2001)); *Steer*, 58 Md. App. at 203-04 ("Maryland law is also well settled that 'the question of whether a defamatory communication enjoys a conditional privilege is one of law for the court.'"). The Court can and should determine its applicability, therefore, by comparing the challenged publication to its source material. *See, e.g.*, *Chesapeake Publ'g Corp.*, 339 Md. at 300-02 (comparing challenged article with criminal file on which it was based and finding that privilege protected article). Indeed, federal courts in this district have *routinely rejected* defamation claims at the motion to dismiss stage on the basis of the fair report privilege. *See, e.g.*, *Harvey*, 48 F.4th at 274 ("The district court held, and we agree, that Harvey failed to state a claim because CNN's statements were privileged under the fair report privilege."); *Olukoya v. Sowore*, 2019 U.S. Dist. LEXIS 129043, at *2 (D. Md. Aug. 1, 2019) (granting motion to dismiss in part under fair report privilege); *Nanji*, 403 F. Supp. 2d at 433 (dismissing defamation claim "because National Geographic fairly and accurately published information based on government reports or actions"); *see also Agbapuruonwu*, 2020 U.S. App.

14

LEXIS 26163, at **11-17 (affirming dismissal of defamation claim under Virginia's analogous fair report privilege).

<h2 style="text-align:center">2.      The Fair Report Privilege Completely Protects the CNN Report.</h2>

Comparing the CNN Report to the case files of which this Court can and should take judicial notice demonstrates clearly that Francis's claims fail as matter of law on account of Maryland's fair report privilege.

Francis admits that "[o]n or about October 8, 2022, Vital[] filed criminal charges against [him], alleging, among other things, that he threatened her with a handgun, as well as harassed her." Compl. ¶ 8.  Those official charges are exactly what CNN reported.[9]  The CNN Report also states that Francis has been the subject of two other peace orders and another charge of assault,[10] exactly as the public docket reflects.  *See* Tobin Decl. Exs. 1-3.  The CNN Report also referenced the Maryland Judiciary Case Search portal and noted the information available there was a matter of public record.[11]  CNN Report at 3:01-3:14.  CNN's reporting is thus a "fair and substantially accurate" summary of court proceedings that the privilege squarely protects.

The CNN Report fairly and accurately summarized court records reflecting Vital's charges against Francis, as well as court records of peace orders and the other assault charge filed against Francis.  The fair report privilege therefore applies as a matter of law and protects CNN from liability here.  For this reason, the Court should dismiss the Complaint with prejudice.

---

[9] *See* CNN Report at 0:07-17 (Keilar: "Madison Vital alleges that an armed student threatened her life on campus.  That student was arrested, but Vital says despite the threat the University didn't warn the community immediately.").

[10] *See* CNN Report at 3:00-14 (Keilar: "You say that this student has a record of doing things like this, what do you mean by that?"  Vital: "If you do go on Maryland Judiciary Case Search, it's public information.  I am not his first peace order, I am his third order.").  As noted above, since Vital's claims, an additional peace order and assault charge were filed against Francis.

[11] *See id.*

15

**B.      Francis Does Not Plausibly Allege That The CNN Report Is False.**

Although the Court properly may dispose of this matter on the basis of the fair report privilege alone, Francis also fails to state a claim for defamation because he does not plead any facts sufficient to plausibly allege that the CNN Report is false, let alone materially false.  Under settled First Amendment precedent, a defamation plaintiff bears the burden of establishing that the challenged statement was false at the time of publication.  *Phila. Newspapers v. Hepps*, 475 U.S. 767, 776 (1986).[12]  Moreover, even literal falsity is insufficient:  As the Supreme Court has explained, "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'"  *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 517 (1991).  Thus, a "statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'"  *Id.*

To survive a motion to dismiss, therefore, Francis cannot simply "couch[] . . . allegations of falsity in vague, conclusory terms[.]"  *Chapin*, 993 F.2d at 1092.  Rather, Francis must "plead facts that, if proven, would allow a reasonable person to consider the statement false."  *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 521 (W.D. Va. 2019); *see also, e.g., Sunrise Pharm., Inc. v. Vision Pharma, LLC*, 799 F. App'x 141, 142 (3d Cir. 2020) (affirming dismissal where plaintiff "failed to plausibly plead [defendant] made a false statement"); *Swindol v. Aurora Flight Scis. Corp.*, 832 F.3d 492, 494-95 (5th Cir. 2016) (same); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) ("a plaintiff must plead facts demonstrating falsity to prevail on a motion to dismiss the complaint in federal court").

---

[12] Francis's references to developments that occurred after CNN published its reporting, *see* Compl. ¶¶ 33-34, are irrelevant to whether that reporting was true at the time of publication.  *See, e.g.*, *Martin v. Hearst Corp.*, 777 F.3d 546, 550 (2d Cir. 2015) (rejecting argument that truthful reporting about plaintiff's arrest "became false . . . after the charges against her were nolled").

Francis fails to carry this burden because he does not – indeed, he cannot – plead any facts that would plausibly demonstrate falsity of the CNN Report.  Francis denies in his Complaint that he stalked, assaulted, or threatened Vital, *see* Compl. ¶ 29, but the case files of the District and Circuit Courts for Baltimore City show those courts both concluded that Francis <u>had</u> assaulted and stalked Vital and posed a continuing threat to her, and on those grounds, the courts entered peace orders against Francis, *see* Tobin Decl. Exs. 7-8.  These judicial findings make it impossible for Francis to plausibly allege falsity, both because they establish the truth of Vital's allegations and because they estop Francis from attempting to re-litigate the truth of those allegations in this action.  *See, e.g.*, *Johnson v. Experian Info. Sols., Inc.*, 2015 U.S. Dist. LEXIS 163257, at **18-19 (D. Md. Nov. 17, 2015) (dismissing defamation claim where doctrine of collateral estoppel "barred" plaintiff from re-litigating truth of challenged statement), *aff'd*, 670 F. App'x 778 (4th Cir. 2016).

Because Francis does not and cannot plausibly allege the CNN Report is false, he fails to state a claim for defamation, and the Court should dismiss his Complaint on this basis as well.

### C. CNN's Reporting Does Not Identify Francis.

The Court should dismiss the Complaint for the additional and independent reason that the CNN Report, which focused on the University's response to Vital's concerns, does not make any actionable statement "of and concerning" Francis.  To prevail on a defamation claim, a plaintiff must show that the allegedly libelous statement was "of and concerning" him.  *See, e.g.*, *Prucha v. Weiss*, 233 Md. 479, 485 (1964) ("For a statement to be libelous, it is necessary to show that the words used . . . were concerned with and injurious to the character and integrity *of the one complaining*.") (emphasis added); *Nat'l Shutter Bar Co. v. G.F.S. Zimmerman & Co.*, 110 Md. 313, 318 (1909) (allegedly defamatory words must refer to the plaintiff), *overruled on*

*other grounds by Cranson v. IBM Corp.*, 234 Md. 477 (1964)); *see also, e.g., AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1005 (4th Cir. 1990) ("'[C]ircumstances of the publication [must] reasonably give rise to the conclusion that there is a particular reference' to [this plaintiff].").

It is for this Court to determine, as a matter of law, whether a defamation plaintiff has pled facts sufficient to demonstrate the statements in question are "of and concerning" him. *See, e.g., AIDS Counseling & Testing Ctrs.*, 903 F.2d at 1004; Restatement (Second) of Torts § 617 cmt. b. (1977); *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001) (whether a challenged statement is "of and concerning" the plaintiff "should ordinarily be resolved at the pleading stage"). Here, Francis does not identify a single specific statement in the CNN Report that he alleges is false and defamatory and of and concerning him – nor could he, given that the challenged News Report does not name Francis at all.

## III.   FRANCIS FAILS TO STATE A CLAIM FOR IIED

CNN's ironclad defenses to the defamation claim bars Francis's IIED claim as well. As the Supreme Court of Maryland has explained, "if there [is] immunity from liability for defamation, there [is] immunity from liability for the other alleged torts claimed by the declaration to have been committed." *Carr v. Watkins*, 227 Md. 578, 583 (1962).

Additionally, Maryland law sets the bar exceedingly high for pleading and proving this particular tort. Recovery for IIED has been limited to only the "most extreme and unusual circumstances." *Hrehorovich v. Harbor Hosp. Ctr.*, 93 Md. App. 772, 799 (1992). To recover, a plaintiff must show that a defendant's conduct was (1) intentional or reckless; (2) extreme or outrageous; (3) causally connected to plaintiff's emotional distress; and (4) that the resulting emotional distress was severe. *Harris v. Jones*, 281 Md. 560, 566 (1977). Such a claim must

18

plead and prove each element with specificity: "It is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist." *Foor v. Juvenile Servs. Admin.*, 78 Md. App. 151, 175 (1989).

Where a plaintiff has failed to meet these stringent pleading requirements for even one element, a motion to dismiss the IIED claim must be granted. *See, e.g.*, *Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 763 (D. Md. 2011) (applying Maryland law and granting motion to dismiss where plaintiff failed to allege with specificity "extreme and outrageous" conduct); *Foor*, 78 Md. App. at 175 (granting motion to dismiss where complaint did not sufficiently allege that defendant acted "intentionally or recklessly").

Here, Francis's Complaint fails to sufficiently plead at least two elements of an IIED claim: the conduct he alleges is not "extreme and outrageous," and he fails to plead sufficient facts to plausibly allege that he has suffered severe emotional distress.

### A.      CNN Did Not Engage In Any Extreme And Outrageous Conduct.

Francis fails to plead any facts that would give rise to a plausible allegation that CNN's conduct was extreme or outrageous.  For conduct to be considered "outrageous," it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Harris,* 281 Md. at 567.  Put another way, the behavior must "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59-60 (1986).  Mere insulting conduct or offensive language thus does not constitute an actionable basis for an emotional distress claim in Maryland.  For example, in *Batson v. Shiflett*, 325 Md. 684, 732 (1992), the Supreme Court of Maryland held that the defendants' conduct was not "outrageous" where they sent truthful information about a labor official to union members, placed the official under surveillance, and sent his wife truthful information about his adultery.

Because of the stringency of this disfavored tort in Maryland, at the time of the *Batson v. Shifflett* decision, the Supreme Court of Maryland had "upheld claims for intentional infliction of emotional distress only three times and only in cases which involved truly egregious acts." *Id.* at 735 (identifying the sufficiently outrageous fact patterns as those where a "psychologist had sexual relations with the plaintiff's wife during the time when he was treating the couple as their marriage counselor," where a "physician did not tell [the] nurse with whom he had sexual intercourse that he had herpes," and where a "worker's compensation insurer's 'sole purpose' in insisting that claimant submit to psychiatric examination was to harass her and force her to abandon her claim or to commit suicide"). Indeed, the Supreme Court has emphasized that, for IIED claims in Maryland, "recovery will be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Id.* at 734; *accord Uzoechi v. Wilson*, 2018 U.S. Dist. LEXIS 88815, at **34-35 (D. Md. May 24, 2018) (IIED is reserved only "for truly outrageous conduct" and "is not meant as an all-purpose bandage for the psychological harm that people face in bad situations") (citations and internal marks omitted).

Here, Francis merely alleges that CNN published a news report that offended him. *See, e.g.* Compl. ¶¶ 49-51. As a matter of settled law in Maryland, these actions do not constitute the "extreme or outrageous conduct" required to plead a viable IIED claim. The Court should accordingly dismiss Francis's IIED claim for this additional reason.

### B.    Francis Has Not Pleaded Severe Emotional Distress, As Maryland Requires.

Francis's IIED claim also fails because he has not pleaded any facts sufficient to show that he has suffered *severe* emotional distress. To demonstrate severity, a plaintiff must establish a truly devastating effect from the defendant's conduct – *i.e.*, the emotional response must be so severe "that no reasonable person could be expected to endure it." *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 161 (1986) (identifying severe responses as being unable to function

20

and unable to attend to necessary matters); *see also Simon v. Union Hosp. of Cecil Cty., Inc.*, 15 F. Supp. 2d 787, 799-800 (D. Md. 1998) (evidence that plaintiff "is under tremendous stress, requires counseling, is often depressed, despondent, and unable to sleep" was *not* enough to show severe emotional distress).

Francis has alleged that he "suffers and continues to suffer, emotional pain and mental anguish" and that he "continues to suffer anxiety at being labeled a misogynist and abusive man." Compl. ¶ 56-57. Those allegations fall far short of distress "so severe that no reasonable man . . . should be expected to endure it." *Pemberton*, 66 Md. App. at 151. Francis has therefore failed to plead sufficient facts to demonstrate that he has suffered *severe* emotional distress, and the Court should dismiss his IIED claim for that reason as well.

## IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR PUNITIVE DAMAGES

The Court should also strike Francis's demand for punitive damages because he has not pleaded facts plausibly establishing that CNN acted with the constitutionally required level of "actual malice" fault. *See generally Dutra Grp. v. Batterton*, 139 S. Ct. 2275, 2286-87 (2019) (ruling that punitive damages were unavailable, as a matter of law, and reversing denial of motion to strike); *Mitchell v. Lydall, Inc.*, 16 F.3d 410 (table), 1994 U.S. App. LEXIS 2177, at *4 (4th Cir. Feb. 10, 1994) (affirming striking of punitive damages under Rule 12(f)); *Mejia v. Telemundo Mid-Atl. LLC*, 440 F. Supp. 3d 495, 499 (D. Md. 2020) (noting that, "for a plaintiff to state a claim for punitive damages for the defamation, he must allege that the defamer acted with actual malice," and ruling that plaintiff "fails to plead the higher standard of actual malice").

Under the First Amendment, a plaintiff cannot succeed in a punitive damages claim against a media defendant, arising out of reporting on a matter of public concern, without pleading and proving actual malice. *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749,

756-57 (1985) (where "expression concerned a public issue . . . a State could not allow recovery of presumed and punitive damages absent a showing of actual malice" (internal marks omitted)). Moreover, under Maryland law as well, "in any defamation action, regardless of a party's status or the subject matter, punitive damages are allowable only if the plaintiff proves that the defamatory statement was made with knowledge of its falsity or with reckless disregard for the truth." *Le Marc's Mgmt. Corp. v. Valentin*, 349 Md. 645, 651 (1998) (vacating punitive damages award in defamation case for failure to prove actual malice); *Yerkie v. Post-Newsweek Stations, Mich., Inc.*, 470 F. Supp. 91, 93 (D. Md. 1979) ("In defamation actions brought by private plaintiffs, test of 'constitutional malice,' while not required to be met to recover for actual damages, is a prerequisite in Maryland and elsewhere to recover for presumed or punitive damages."). Even outside of the defamation context, Maryland courts have "consistently required that punitive damages only be awarded based on the defendant's conscious wrongdoing." *Le Marc's Mgmt. Corp.*, 349 Md. at 652.

"Actual malice" in defamation cases is a constitutionally established fault threshold and term of art that means the defendant made the statement knowing it was false or with a "high degree of awareness of [its] probable falsity." *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 300 (4th Cir. 2008) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)). Courts have explained that actual malice requires more than a showing of negligence, that a publication was "erroneous, derogatory or untrue," or that a defendant acted with ill will. *Capital-Gazette Newspapers v. Stack*, 293 Md. 528, 539 (1982) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 335 n.6, 340-41 (1974), and *New York Times Co. v. Sullivan*, 376 U.S. 254, 281 (1964)). Even at the pleading stage, a plaintiff must allege facts that plausibly show that the defendant either knew the challenged statements were false or "in fact entertained serious doubts as to the truth of [the]

publication." *Mayfield*, 674 F.3d at 377-78 (citation omitted) (affirming dismissal for failure to allege facts showing actual malice); *Fairfax v. CBS Corp.*, 2 F.4th 286, 294 (4th Cir. 2021) (same).

Francis's pleading here is indisputably deficient as it does not plead actual malice to support a punitive damages claim.  The Complaint merely asserts that CNN did not "research Vital[] or the veracity of her statements prior to reporting them" and that CNN did not "retract the story, contact Plaintiff for his position, or update the story once the criminal charges were dismissed in Plaintiff's favor."  Compl. ¶¶ 43-44.  As a matter of law, however, "failure to investigate before publishing, even when a reasonably prudent person would have done so, is *not* sufficient to establish reckless disregard," *see Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (emphasis added), and actual malice cannot be inferred from a publisher's decision not to retract or correct a statement, *see Blankenship v. NBCUniversal, LLC*, 60 F.4th 744, 763 (4th Cir. 2023) ("[T]he lack of a retraction has little to no relevance in the actual malice inquiry.").  Francis thus fails to plausibly allege that CNN published its report with actual malice fault, and his claim for punitive damages fails as a result.

## V.     FRANCIS ALSO SEEKS AN UNCONSTITUTIONAL PRIOR RESTRAINT

Finally, Francis requests that "all news stories and interviews of Vital[] be removed from Defendants['] YouTube channels and any other places where they can be found."  Compl. at 7.  Maryland law and the First Amendment highly disfavor injunctive relief against the press to retract a news report.  Indeed, such relief would amount to an unconstitutional prior restraint.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 747 (9th Cir. 2015) (en banc) ("The panel's takedown order of a film of substantial interest to the public is a classic prior restraint of speech." (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993)).  Prior restraints are "the most serious and

the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).  As a result, every prior restraint bears "a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).  And while prior restraints are always constitutionally suspect, "[t]he damage can be particularly great" where, as here, a prior restraint quells "the communication of news and commentary on current events." *Neb. Press Ass'n*, 427 U.S. at 559.

More than two centuries of unbroken precedent establish a "virtually insurmountable barrier" against the issuance of a prior restraint on a news organization. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 259 (1974) (White, J., concurring).  In fact, the U.S. Supreme Court has *never* held a prior restraint constitutional, *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996), and has left the door open to prior restraints "only in exceptional cases," *Near v. Minnesota*, 283 U.S. 697, 716 (1931).  This is not such a case.  *Cf. id.* ("No one would question but that a government might prevent actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops."); *New York Times Co. v. United States*, 403 U.S. 713, 726-27 (1971) (Brennan, J., concurring) ("[O]nly governmental allegation *and proof* that publication must inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea can support even the issuance of an interim restraining order.") (emphasis added).  The Court should therefore reject this requested relief as unconstitutional.

## CONCLUSION

For the foregoing reasons, CNN respectfully requests that the Court grant its motion, dismiss the Complaint with prejudice, and grant such further relief as deemed just and proper.

Dated:  August 14, 2023                      Respectfully submitted,

                                             BALLARD SPAHR LLP

                                             /s/ *Charles D. Tobin*
                                             Charles D. Tobin (D. Md. Bar No. 15919)
                                             Maxwell S. Mishkin (D. Md. Bar No. 20650)
                                             Margaret N. Strouse (D. Md. Bar No. 21714)
                                             1909 K Street NW, 12th Floor
                                             Washington, DC 20006
                                             Tel: (202) 661-2200
                                             Fax: (202) 661-2299
                                             tobinc@ballardspahr.com
                                             mishkinm@ballardspahr.com
                                             strousem@ballardspahr.com

                                             *Counsel for Defendant Cable News Network, Inc.*